UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACOB MANU,<br><br>                Plaintiff,<br>    v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>                Defendant. | CASE NO. 2:25-cv-01956-LK<br><br>ORDER TO TRANSFER CASE |

This matter comes before the Court on Plaintiff Jacob Manu's Motion for Temporary Restraining Order. Dkt. No. 3. On the same day that Manu filed his motion, the Court ordered the parties to provide supplemental briefing addressing whether the Court should transfer, dismiss, or stay this action in light of the first-to-file rule and the pendency of an earlier filed case, *Patterson v. National Collegiate Athletic Association*, 3:25-cv-00994 (M.D. Tenn.), in which Manu is a member of the putative injunctive relief class that advances substantially the same claims and seeks the same relief of enjoining the National Collegiate Athletic Association ("NCAA") from enforcing the two rules at issue here. *See* Dkt. No. 8. The parties filed their supplemental briefs,

ORDER TO TRANSFER CASE - 1

Dkt. Nos. 14, 18, 19, and the matter is now ready for the Court's consideration. For the reasons set forth below, the Court transfers this case to the United States District Court for the Middle District of Tennessee under the first-to-file rule.

## I. BACKGROUND

The background facts are not in dispute. Manu is a college football player at the University of Washington ("UW") in Seattle, Washington. Dkt. No. 1 at 5. The NCAA is a not-for-profit education organization and the governing body of college sports. *Id.* Manu contends that "an academic institution that wishes to compete in any meaningful way in the highest and most popular level of collegiate athletics must maintain membership in the NCAA and abide by the Division I rules and regulations promulgated by the NCAA and its members"; institutions that fail to comply with NCAA rules can face significant penalties. *Id.* at 5–6.

Manu challenges two of the NCAA's rules: the Four Seasons Rule and the Redshirt Rule. *Id.* at 9. The Four Seasons Rule provides that although Division 1 college athletes have a five-year window to exhaust their competition eligibility, they can only *compete* in four seasons of intercollegiate competition. *Id.* at 1–2. A college athlete may use the fifth year "only to compete in team activities without, or with limited, participation in intercollegiate competition" under the Redshirt Rule. *Id.* at 2. The Redshirt Rule is "a term of art describing how a college athlete may preserve a season of competition by not competing (or minimally competi[ng]) under several interrelated provisions of the NCAA Division I Manual," and "[a] redshirt year may occur in multiple ways[.]" *Id.* at 2 n.3. For example, football players can compete in up to four games a season without using up a year of competition eligibility. *Id.*

Manu began his college football career in 2022 at the University of Arizona, where he competed in three seasons. *Id.* at 19. His third season in 2024 was cut short after seven games due to a season-ending knee injury. *Id.*

ORDER TO TRANSFER CASE - 2

     Manu subsequently transferred to UW in January 2025. *Id.* at 20. Although Manu planned to sit out most of the 2025 season as a redshirt year, his return to competition was accelerated when the team's starting linebacker suffered a season-ending injury. *Id.* Now, Manu faces a dilemma: if he sits out the remainder of this season's games to preserve his redshirt year, "his team will suffer in his absence, and his ability to maximize his [name, image, and likeness ("NIL")] earning opportunities for the 2026–27 season will be diminished." *Id.* "Alternatively, if he plays in more than two of UW's remaining seven regular season games, he will lose out on the chance to obtain NIL Compensation in the 2026–27 season." *Id.*

     Manu contends that the NCAA's Four Seasons and Redshirt Rules restrain and suppress competition, thereby violating Section 1 of the Sherman Act, 15 U.S.C. § 1, *et seq. Id.* at 35–37. He also alleges that the rules violate Washington's Antitrust Act, Chapter 19.86 of the Revised Code of Washington. *Id.* at 37–38.

## II.  DISCUSSION

     Manu's supplemental brief contends that the Court should not apply the first-to-file rule and should instead promptly adjudicate his motion for a TRO to avoid delay. Dkt. No. 14 at 1–2. The NCAA responds that this Court should apply the rule and transfer this case to the United States District Court for the Middle District of Tennessee, which can promptly adjudicate the TRO motion. Dkt. No. 18 at 6. In reply, Manu reiterates his delay argument, notes that a state court in Idaho recently granted a player a TRO, and states that the "*Patterson* court recently scheduled a hearing on the plaintiffs' motion for a preliminary injunction for December 15, 2025," which is "well after Manu could obtain meaningful injunctive relief." Dkt. No. 19 at 1–2.

     The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.*,

ORDER TO TRANSFER CASE - 3

678 F.2d 93, 94–95 (9th Cir. 1982). "Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Id.* at 95. Consequently, when the rule applies, the court in the later-filed action can dismiss, stay, or transfer the later-filed suit. *Kinn v. Quaker Oats Co.*, No. C16-1262RSL, 2016 WL 11706919, at *2 (W.D. Wash. Nov. 3, 2016); s*ee also SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1089 (S.D. Cal. 2002).

The first-to-file rule should not be applied mechanically, but it "should not be disregarded lightly" because it typically promotes judicial efficiency. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (citation omitted). When determining whether the later-filed suit should be dismissed, stayed, or transferred, courts consider the chronology of the lawsuits, the similarities of the parties, and the similarities of the issues. *Kohn Law Group, Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

The first consideration—the chronology of the lawsuits—is satisfied because this action was filed on October 9, 2025, Dkt. No. 1, whereas *Patterson* was filed on September 2, 2025, *Patterson*, Dkt. No. 1. Manu does not contest this factor. *See* Dkt. No. 14 at 4.

As for the second factor, Manu concedes that the parties are similar: the NCAA is the Defendant in both actions, and Manu is a member of the putative class in *Patterson*. *See id.* Manu argues that "whether or not he will be included in what might be ultimately certified as a class (assuming one is certified at all) is unknown and will not be known for a substantial period of time" and that, "even if he is later determined to be part of a certified class (which if it happens would likely be under Fed. R. Civ. P. 23(b)(3)), Manu may very well have the right to opt out of the class, meaning he receives no relief of any kind in *Patterson*." *Id.* The NCAA responds that *Patterson* proposes a Rule 23(b)(2) class, and as such, class members would not have opt-out

rights. Dkt. No. 18 at 12–13. The NCAA appears to be correct on this point on the limited record: because Manu began playing football in the fall of 2022, Dkt. No. 1 at 19, he is a member of the putative Rule 23(b)(2) "Injunctive Relief Class"—whose members lack opt-out rights—rather than the putative Rule 23(b)(3) "Lost Opportunities Damages Class," which comprises people who enrolled in college no later than the spring of 2022. *See Patterson*, Dkt. No. 1 at 33–34 (defining the two proposed classes); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (explaining that Rule 23(b)(2) classes are "mandatory" and the rule "provides no opportunity . . . to opt out"). And as the NCAA notes, when considering the similarity of the parties in the context of the first-to-file rule, courts consider putative class members. Dkt. No. 18 at 12; *see also Bewley v. CVS Health Corp.*, No. C17-802RSL, 2017 WL 5158443, at *2 (W.D. Wash. Nov. 7, 2017) ("In the context of class actions, the district court should compare the putative classes rather than the named plaintiffs to see whether the classes represent at least some of the same individuals."); *see also Booker v. Am. Honda Motor Co.*, No. 2:20-CV-05166-SVW, 2020 WL 7263538, at *3 (C.D. Cal. Oct. 20, 2020) (if application of the first-to-file rule were prohibited until after the class certification stage, "at which point parties [will] have already expended substantial resources towards pleadings, motions, and class certification discovery," it would be "inconsistent with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity" (citation modified)). Thus, the parties are substantially similar because the Defendant is the same in both cases, and Manu is the plaintiff here and a member of one of the putative classes in *Patterson*.[1]

---

[1] The Court also notes that Manu could have filed this suit in the Middle District of Tennessee because the NCAA resides in that district. *See* 28 U.S.C. §§ 1391(b)(1), 1404(a); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) (an unincorporated association is deemed a citizen of every state where its members are citizens); NCAA Member Institutions, https://web3.ncaa.org/directory/memberList?type=1 (last visited Nov. 10, 2025) (listing numerous members in the Middle District of Tennessee).

ORDER TO TRANSFER CASE - 5

Turning to the third consideration, Manu concedes that the issues in the two cases "overlap" but contends that it is unlikely that the Court in *Patterson* could impose a nationwide injunction. Dkt. No. 14 at 4 (citing *Trump v. CASA, Inc.*, 606 U.S. 831, 841–45 (2025)). However, Manu does not dispute the *Patterson* court's power to issue an injunction that benefits all class members. *Cf. Trump v. CASA, Inc.*, 606 U.S. at 849–50 (contrasting a class action, where courts can award complete relief to all parties, with an improper universal injunction that "benefits parties and nonparties alike"). Manu also argues that *Patterson*, which is pending in Tennessee, does not include the violations he alleges here of Chapter 19.86 of the Revised Code of Washington. Dkt. No. 14 at 4. The NCAA responds that the issues need not be identical, and the plaintiffs in both cases rely on the same NCAA rules and similar factual allegations. Dkt. No. 18 at 13. The Court agrees with the NCAA. For the first-to-file rule to apply, the issues in the actions "need not be identical, only substantially similar." *Kohn Law Grp.*, 787 F.3d at 1240. "[S]light differences in the claims asserted do not prevent application of the rule where the underlying complained-of conduct is almost identical." *Walker v. Progressive Cas. Ins. Co.*, No. C03-656R, 2003 WL 21056704, at *3 (W.D. Wash. May 9, 2003). The Court finds that the two cases present similar factual allegations, challenge the same two NCAA rules, and allege the same Sherman Act violations. *Compare* Dkt. No. 1 at 19–21, 35–37, 38–39, *with Patterson*, Dkt. No. 1 at 33, 53–55. Manu's assertion of an additional state law claim does not defeat this element. *See, e.g.*, *Walker*, 2003 WL 21056704, at *3 (dismissing case under the first-to-file rule even though it asserted a state law claim that the first-filed case did not); *Kinn*, 2016 WL 11706919, at *3 (transferring case under the first-to-file rule "[d]espite the existence of a unique claim in this action"); *Elee, LLC v. Vino 100*, No. C08-1146 MJP, 2009 WL 361254, at *1 (W.D. Wash. Feb. 13, 2009) ("Washington's interest in interpreting and enforcing its own laws does not create an exception to the first-to-file rule."). Indeed, "a restraint of trade claim under RCW 19.86.030 . . . is

ORDER TO TRANSFER CASE - 6

Washington's equivalent of section 1 of the Sherman Antitrust Act," and "[i]n construing RCW 19.86.030, courts are to be guided by federal decisions interpreting comparable federal provisions." *Khalid v. Citrix Sys., Inc.*, No. 2:20-CV-00711-RAJ, 2021 WL 1401540, at *7 (W.D. Wash. Apr. 14, 2021) (quoting *Murray Pub. Co. v. Malmquist*, 832 P.2d 493, 497 (Wash. Ct. App. 1992)). All three considerations weigh in favor of applying the first-to-file rule here.

Apart from the factors, Manu argues that the first-to-file rule is discretionary, and the Court should decline to follow it and instead decide his motion for a TRO, because "justice delayed is justice denied." Dkt. No. 14 at 1 (arguing that he "cannot obtain effective relief in this or any other case unless this Court grants his pending Motion for a Temporary Restraining Order" because with each passing week, the number of games he can play in without losing eligibility is decreasing). The NCAA responds that the Middle District of Tennessee has quickly adjudicated other requests for TROs challenging the NCAA's eligibility rules, it is familiar with antitrust challenges against the NCAA, and it can promptly adjudicate Manu's TRO motion too. Dkt. No. 18 at 7–8 (citing *Pavia v. NCAA*, 760 F. Supp. 3d 527, 536 (M.D. Tenn. 2024); *Boyd v. NCAA*, No. 3:25-cv-00729 (M.D. Tenn. filed June 30, 2025); and *Bellamy v. NCAA*, No. 3:25-cv-00750 (M.D. Tenn. filed July 3, 2025)). The Court agrees that the Middle District of Tennessee is well equipped to decide Manu's motion promptly, and avoiding duplicative and potentially conflicting determinations of the legal issues at play serves the interests of justice and judicial efficiency. *See Kinn*, 2016 WL 11706919, at *2. Moreover, as the NCAA points out, "[t]he urgency Plaintiff claims exists to resolve his TRO Motion is a product of his delay in bringing this action." Dkt. No. 9 at 5. The possibility of an injury to another player on Manu's college football team was foreseeable, and even after such an injury occurred on September 20, 2025, Manu did not file his complaint until October 9, 2025. Dkt. No. 1. Even then, he waited until October 22, 2025 to file his motion for a

TRO.[2] Accordingly, the balance of factors weighs heaving in favor of applying the first-to-file rule.

### III. CONCLUSION

For the foregoing reasons, the Court DIRECTS the Clerk to immediately TRANSFER this matter to the United States District Court for the Middle District of Tennessee as related to *Patterson v. National Collegiate Athletic Association*, 3:25-cv-00994 (M.D. Tenn.).

Dated this 10th day of November, 2025.

Lauren King
United States District Judge

---

[2] "Parties facing the threat of immediate and irreparable harm generally seek a restraining order as quickly as possible." *Lee v. Haj*, No. 1:16-cv-00008-DAD-SAB, 2016 WL 8738428, at *2 (E.D. Cal. Feb. 22, 2016). Delays of one month or more are common grounds for denying motions for temporary restraining orders, and some courts deny temporary relief based on delays of as little as ten days. *See, e.g.*, *Perez v. City of Petaluma*, No. 21-cv-06190-JST, 2021 WL 3934327, at *1 (N.D. Cal. Aug. 13, 2021) (one-month delay); *Devashayam v. DMB Cap. Grp.*, No. 3:17-cv-02095-BEN-WVG, 2017 WL 6547897, at *4 (S.D. Cal. Dec. 20, 2017) (one-month delay); *Lee*, 2016 WL 8738428, at *2 (one-month delay); *Altman v. Cnty. of Santa Clara*, No. 4:20-cv-02180-JST, ECF No. 22 at 2 (ten-day delay).